UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JULIE S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00095-KMB-SEB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**<u>ENTRY REVIEWING THE COMMISSIONER'S DECISION</u>**

Plaintiff Julie S. applied for disability insurance benefits from the Social Security Administration ("SSA") on August 2, 2019, alleging an onset date of October 11, 2018. [Dkt. 10-5 at 5.] Her application was initially denied on February 5, 2020, [dkt. 10-3 at 15], and upon reconsideration on July 17, 2020, [*id.* at 32]. Administrative Law Judge Renita K. Bivins (the "ALJ") conducted a hearing on July 29, 2021. [Dkt. 10-2 at 40.] The ALJ issued a decision on September 15, 2021, concluding that Julie was not entitled to receive disability insurance benefits. [*Id.* at 13.] The Appeals Council denied review on May 24, 2022. [*Id.* at 2.] On July 25, 2022, Julie timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I.    STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [her] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of

the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work, and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  BACKGROUND

Julie was born in 1964 and was 54 years old on the alleged disability onset date of October 11, 2018. [Dkt. 10-5 at 5.] She has at least a high school education and previously worked as a case team worker, an employment specialist, a customer service representative, and a bank courier. [Dkts. 10-2 at 32; 10-6 at 93.][2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Julie was not disabled. [Dkt. 10-2 at 18-34.] Specifically, the ALJ found as follows:

- At Step One, Julie had not engaged in substantial gainful activity[3] since October 11, 2018, the alleged onset date. [*Id.* at 18.]

- At Step Two, Julie had the following severe impairments: degenerative disc disease at the lumbar and cervical spine; major joint dysfunction; obesity; dextroscoliosis; and neuropathy. [*Id.*]

- At Step Three, Julie did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 22.]

- After Step Three but before Step Four, Julie had the RFC to "perform light work as defined in 20 C.F.R. [§] 404.1567(b) except as follows: She is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk 4 hours per 8-hour day and sit 6 hours per 8-hour day with normal breaks; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance as defined in the *Selected Characteristics of Occupations*; can occasionally stoop, kneel, crouch, and crawl; limited to frequent handling and fingering bilaterally; can perform occasional overhead reaching with the right upper extremity; must avoid concentrated exposure to wetness; and must avoid all exposure to unprotected heights of ladders, ropes, or scaffolds and hazardous machinery." [*Id.* at 23-31.]

- At Step Four, Julie can perform her past relevant work as a Customer Service Representative/Administrative Clerk. [*Id.* at 31-34.]

---

[2] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

- At Step Five,[4] that there were jobs that existed in significant numbers in the national economy that Julie could have performed through the date of the decision. [*Id.* at 32-34.] Accordingly, the ALJ determined that Julie was not disabled at any time between her alleged onset date of October 11, 2018, through the date of the ALJ's decision. [*Id.* at 34.]

### III.   DISCUSSION

Julie makes three assertions of error regarding the ALJ's decision: (1) the ALJ failed to properly evaluate the medical evidence, particularly the opinion of Julie's treating physician, Dr. Walcott; (2) the ALJ failed to properly analyze Julie's treating physician's opinion that her medical impairments met or equaled a listing; and (3) the ALJ failed to properly evaluate Julie's pain. [Dkt. 13 at 4.]

As an initial matter, the Seventh Circuit has "repeatedly stated [i]t is not this court's responsibility to research and construct the parties' arguments." *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (citations and internal quotation marks omitted). Accordingly, a party that fails to cite or develop "any basis, either factual or legal, for their arguments" has waived them. *See Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 965 (7th Cir. 1996). The Court notes that Julie's counsel has barely developed the arguments presented on appeal such that the Court could properly find them to be waived. The Court will, however, substantively review Julie's arguments, and finds that even when considered, the decision of the ALJ should be affirmed.

---

[4] Because the ALJ found that Julie could perform her past relevant work, her analysis could have ended at Step Four. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). The ALJ elected to proceed to Step Five and made "alternative findings." [Dkt. 10-2 at 32.]

5

### A. The ALJ properly evaluated the medical evidence, including the opinion of Dr. Walcott.

Julie argues that "the ALJ failed to properly discuss the opinions of the [Julie's] treating physician, Dr. Walcott," who had previously opined that Julie was "unable to perform meaningful and sustainable work." [Dkt. 13 at 4.] Though the ALJ cited to Dr. Walcott's treatment notes in her decision, Julie argues that the ALJ did not properly "assign any weight or persuasiveness" to Dr. Walcott's opinion. [*Id.* at 4-5.] Julie argues that the ALJ's failure to assign weight or persuasiveness to Dr. Walcott's opinion is particularly troublesome in light of the fact that she "failed to find any of the medical opinions regarding [Julie's] limitations to be particularly persuasive." [*Id.* at 6.] Though Julie refers generally to "the opinions of [her] treating physician, Dr. Walcott," [*id.* at 4], she primarily points to one piece of record evidence: a note from Dr. Walcott that was addressed "to whom it may concern" and dated February 24, 2020, outlining that Julie is a "long term patient" of his with a history of medical problems and pain, primarily in her back. [Dkt. 10-8 at 418.] Dr. Walcott goes on to say that it is his medical opinion that "breast reduction is indicated for pain reduction, posture improvement, and improved ADLs. Julie cannot work at this time due to need for frequent position changes from standing, sitting, and laying due to direct or referred lumbar pain." [*Id.*] Julie also points to a few of Dr. Walcott's notes that she has "poor functional capacity" and diagnoses of "bulging of cervical intervertebral disc and failed back syndrome, lumbar," and a 2017 note that Julie has had constant back pain for years aggravated by certain movements. [Dkt. 13 at 3, 5-6 (citing dkts. 10-8 at 264, 468; 10-9 at 8).]

The Commissioner responds that Dr. Walcott "offered a surgical recommendation that the ALJ was not obligated to discuss" because the contested evidence did not include specific limitations nor say how long the unspecified limitations would be needed following the recommended surgery. [Dkt. 18 at 10-11.] Because Dr. Walcott's statement was that Julie could

6

not work, it was not a medical opinion in the first place. [*Id.* at 11.] Alternatively, the Commissioner argues that Dr. Walcott's statement is not a medical opinion because it did not assess Julie's functioning for at least twelve months. [*Id.*] Finally, the Commissioner argues that Dr. Walcott's opinion was a "pre-surgical snapshot," and that the record evidence demonstrates that Julie reported pain reduction and adequate functioning following her surgery in June 2020. [*Id.* at 12.]

On appeal, the court will not reweigh evidence considered by the ALJ. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). An ALJ "is not required to spell out in the record every piece of evidence that [she] considered and then accepted or rejected." *Crowell v. Kijakazi*, 72 F.4th 810, 815 (7th Cir. 2023). Rather, "[i]t is enough that the [ALJ] build a logical bridge between the evidence and [her] conclusions." *Id.*

SSA regulations require that an ALJ's written decision evaluate the persuasiveness of any "medical opinion." 20 C.F.R. § 404.1520c(b). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Whether a claimant is able to work is a question to be decided solely by the ALJ, and statements that a claimant is disabled or unable to work are not considered "medical opinions" that require such evaluation. 20 C.F.R. § 404.1520b(c) ("Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision."), (c)(3)(i) (including "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work"); *Spies v. Colvin*, 641 F. App'x

7

628, 636 (7th Cir. 2016) (A statement that the claimant could not work "is not a *medical opinion*, and thus it was entitled to no weight, even coming from a treating physician."); *Sawyer v. Colvin*, 512 F. App'x 603, 608-09 (7th Cir. 2013) ("Excluded from [the definition of 'medical opinion'] are opinions about a claimant's ability to work, a question that the regulation reserves for the Commissioner alone. . . . Thus, the ALJ did not have to weigh these comments like medical opinions.").

It is clear from the entirety of the ALJ's opinion that she did thoughtfully consider several of Dr. Walcott's reports and opinions throughout her analysis. [*See, e.g.*, Dkt. 10-2 at 21, 25, 29, and 30-31 (reviewing Dr. Walcott's reports from August 2019, May 2020, June 2020, September 2020, and December 2020).] The Court finds that the statement that Julie "cannot work at this time" was not a medical opinion that the ALJ necessarily needed to evaluate because it is not "a statement from a medical source about what [she] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2); *Spies*, 641 F. App'x at 636. The Court finds the ALJ's analysis of Dr. Walcott's reports sufficient such that the ALJ "buil[t] a logical bridge between the evidence and [her] conclusions." *Crowell*, 72 F.4th at 810.

Further, it appears that the February 24, 2020 letter was written (at least in part) to recommend breast reduction surgery for Julie and to note Julie's then-existing problems attributed to her back. [Dkt. 10-8 at 418.] Julie had the recommended breast reduction surgery in June 2020. [*See id.* at 461, 479-80.] The ALJ properly analyzed the completion of Julie's breast reduction surgery, the subsequent improvement to her pain levels, and the temporal nature of the limitations Julie faced as a result of the surgery. [*See, e.g.*, Dkt. 10-2 at 19, 26, 27, and 31.] The ALJ also

8

explicitly considered state-agency physician Dr. Sands' assessment, which took place in July 2020 and took into account Julie's breast reduction surgery and recovery. [*Id.* at 30; dkt. 10-3 at 30.]

The Court is compelled to point out that Julie makes an incorrect assertion that the ALJ's analysis was allegedly substandard because "[t]he ALJ did not find any of the medical opinions regarding [Julie's] limitations should be given great weight or even to be persuasive." [Dkt. 13 at 2.] The ALJ explicitly stated that she found "the *Physical Residual Functional Capacity Assessments* completed by the State agency medical consultants at the initial and reconsideration levels are persuasive" and that the "[RFC] at Finding #5 incorporates the State consultants' recommendations." [Dkt. 10-2 at 30.] Further, the ALJ found Dr. Gatton's medical consultative report to be "somewhat persuasive." [*Id.*] For all of these reasons, the Court finds that the ALJ's analysis of the medical evidence, including Dr. Walcott's opinions, was proper and that remand is not warranted.

**B. The ALJ properly analyzed Dr. Walcott's opinion regarding Listing 1.04.**

Julie points to evidence that, in February 2021, Dr. Walcott completed a form finding that she met Listing 1.04 (Disorders of the Spine). [Dkt. 13 at 6 (citing dkt. 10-9 at 19).] That listing was replaced by Listing 1.15 in April 2021. [*Id.*] The ALJ found that the form was not persuasive because the listing was outdated and no longer applicable, [dkt. 10-2 at 22], which Julie argues was error given that Listing 1.04 was still in effect at the time the form was completed. [Dkt. 13 at 6-7.]

The Commissioner responds that the ALJ properly applied Listing 1.15 to her September 2021 decision, since it replaced Listing 1.04 for any decision issued on or after April 2, 2021. [Dkt. 18 at 7-8 (citing *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020)).] Further, the ALJ "reasonably determined" that Julie had not met the elements of Listing 1.04, even if it were still in effect. [*Id.* at 9.] The

Commissioner argues that the ALJ also properly found that Julie did not meet the criteria for Listing 1.15. [*Id.* at 8-9.]

The SSA regulation replacing Listing 1.04 with Listing 1.15 applies to decisions issued on or after the effective date of April 2, 2021. 85 Fed. Reg. 78164-01, 2020 WL 7056412, at *78164 ("As we noted in the dates section of this preamble, these final rules will be effective on April 2, 2021. . . . When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date."); *id.* at *78189 n.2 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). District courts have held that it is appropriate for ALJs to apply Listing 1.15 to decisions made after the effective date, and that Listing 1.04 is irrelevant to decisions made after April 2, 2021. *See, e.g.*, *Grady v. Comm'r of Soc. Sec.*, 2023 WL 2300512, at *3 (N.D. Ind. Mar. 1, 2023) ("Listing 1.04A was not applicable on April 22, 2021, the date of the ALJ's decision, as the new Listing 1.15 went into effect on April 2, 2021. . . . The ALJ was not required to evaluate former Listing 1.04A, and any analysis of Listing 1.04A is irrelevant where the ALJ fully evaluated Grady's impairments under Listing 1.15. As a result, the ALJ did not err by failing to analyze Listing 1.04A, as Listing 1.15 is the applicable Listing.").

In this case, the ALJ issued her decision on September 15, 2021, nearly six months after Listing 1.15 replaced Listing 1.04. [Dkt. 10-2 at 34.] The ALJ found that, though Dr. Walcott "completed two forms in which he indicated that [Julie's] spinal issues met the severity requirements of [L]isting 1.04," those forms were "not persuasive because they refer to an outdated listing that is no longer applicable." [*Id.* at 22.] The ALJ did analyze Listing 1.15 and found that Julie did not meet its criteria. [*Id.*] The Court agrees that Listing 1.15 is the applicable listing and

that said listing was properly considered by the ALJ. Accordingly, the ALJ's finding that Dr. Walcott's assessment of Listing 1.04 was not persuasive was not error and does not warrant remand.

### C. The ALJ properly evaluated Julie's pain.

Julie argues that "[a]s the medical records make [] clear," she "suffers from pain as it relates to her chronic back pain." [Dkt. 13 at 7.] If the ALJ had properly considered her pain, Julie contends that "the ALJ would have had no choice but to incorporate the evidence as it relates to [her] limitations." [*Id.*]

As stated by the Commissioner, Julie's brief notably "does not mention any of the standards for evaluating the validity of the ALJ's assessment of [Julie's] subjective symptoms." [Dkt. 18 at 19.] Nor does Julie address the appropriate legal standard in her reply. [*See* dkt. 19.] Accordingly, the Court finds that Julie's argument on this point was waived. *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 795 (7th Cir. 2013) ("Their brief, however, does not contain a legal argument as to how the judge abused his discretion. . . . Any argument on this ground is thus waived.").

Waiver notwithstanding, the Commissioner responds that the ALJ properly identified "numerous undisputed conflicts between the record and [Julie's] account of limitations"; for example, Julie testified that pain prevented her from concentrating on anything for more than ten minutes, but the ALJ pointed to several activities evidencing that she was not so limited. [Dkt. 18 at 19-20.] The Commissioner further argues that the ALJ properly found that Julie's treatment was effectively controlling her pain. [*Id.* at 21.]

When evaluating a claimant's symptoms, including a claimant's alleged pain, an ALJ must undergo a two-step process. *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). First, the ALJ

11

"must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. Second, she must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will consider factors relevant to a claimant's symptoms including: "(a) the claimant's daily activities; (b) the location, duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) type, dosage, effectiveness and side effects of medication; (e) treatment other than medication; (f) any measures the claimant has used to relieve the pain or other symptoms; and, (g) functional limitations and restrictions." *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the ALJ properly undertook this two-step process and analyzed several of Julie's allegations and record evidence regarding pain. [Dkt. 10-2 at 23-31.] The ALJ's analysis was both detailed and thoughtful; in comparison, Julie's assertion of error related to the same—confined to a single paragraph—fails to point to any specific evidence that the ALJ allegedly failed to consider. [Dkt. 13 at 7.] The Court accordingly finds that the ALJ properly analyzed Julie's pain and that remand is not appropriate.

## IV.   CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments

and for whom working is difficult and painful." *Id.*  Taken together, the Court can find no legal basis presented by Julie to reverse the ALJ's decision that she was not disabled during the relevant period.  Therefore, the decision below is **AFFIRMED.**  Final judgment shall issue accordingly.

    **SO ORDERED.**

Date: 8/24/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

William Joseph Jenner
Jenner, Pattison & Sharpe
jschafer@wjennerlaw.net

Eric Harris Schepard
SSA-Ogc
eric.schepard@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov